147 N.W.2d 604 (1967)
RAPID CITY, Plaintiff and Appellant,
v.
Everette L. TUNING, Defendant and Respondent.
No. 10330.
Supreme Court of South Dakota.
January 10, 1967.
Thomas P. Ranney, Rapid City, for plaintiff and appellant.
No appearance for defendant and respondent.
HOMEYER, Presiding Judge.
Defendant was arrested and charged in the Municipal Court of Rapid City with the violation of a city ordinance which prohibited a dog from running at large. Prior to trial defendant made a motion to dismiss on jurisdictional grounds.[1] The motion was granted[2] and the city appeals.
SDC 45.0201 provides: "Every municipality shall have power: (47) To regulate or prohibit the running at large of dogs, animals, and poultry, to establish pounds, appoint poundmasters, and regulate the impounding of animals, and to impose a tax or license on dogs running at large."
Section 7.1105, as amended, of the 1962 Revised Ordinances of the City of Rapid City, which it is claimed defendant violated, reads: "The owner shall keep his dog or cat under restraint at all times and shall *605 not permit such dog or cat to be at large off the premises or property of the owner, unless under the control of a competent person." Other sections require that dogs kept within the city be licensed annually with a fee of $2.00 per dog and that the license tag issued to the owner be worn by the licensed dog. The ordinances also provide for impoundment of dogs found running at large, whether or not licensed, redemption from impoundment if the owner is known or ascertainable, and destruction of impounded animals if no redemption is made, or citation of the owner for violations without impoundment. It is admitted that defendant's dog was properly licensed and the license tag was properly displayed.
The legislature may regulate the keeping of dogs and may prohibit them from running at large, and it may also delegate that power to cities and other municipal corporations. City of Dickinson v. Thress, 69 N.D. 748, 290 N.W. 653; 4 Am.Jur.2d., Animals, § 23; 62 C.J.S. Municipal Corporations § 218. In the text, 7 McQuillin, Municipal Corporations, 3rd Ed., the author states the applicable legal principles. Sec. 24.284: "Dog ordinances are to be found in most municipal corporations, and without doubt under municipal police power or a general welfare clause and in some instances under specific power, municipal corporations can enact such ordinances regulating and requiring dogs to be registered and licensed". Sec. 24.288: "Municipal corporations ordinarily may and frequently do prohibit under penalty the owner or keeper of dogs from letting them run at large and require that the owner or keeper confine his dog to his premises or keep it on leash." In Sentell v. New Orleans and Carrollton Railroad Company, 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169, the court said: "It is purely within the discretion of the legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets."
In Thiele v. City and County of Denver, 135 Colo. 442, 312 P.2d 786, it was said:
"It is within the reasonable discretion of the legislative body to determine how and to what extent dogs running at large within a city should be restrained and disposed of. Hofer v. Carson, supra. Not only may they become a menace to health as carriers of disease, but as is common knowledge many dogs have a propensity to bite or frighten people, frequently create traffic hazards and destroy the flowers and shrubbery of suffering neighbors. The dog's achievement of a full property status has been coupled with the growth of modern city life with all its complexities. Traditional rights of citizens to keep livestock and fowl have been abolished altogether in most cities. It is only natural then that dogs, which historically have been the object of special restraints, should become even more restricted as to freedom of movement than in earlier times."
Municipal corporations may also by ordinance require dogs within a city to be registered or licensed and impose a license fee or tax upon keeping them. 9 McQuillin, Municipal Corporations, 3rd Ed., Revised, Sec. 26.54. 4 Am.Jur.2d, Animals, § 24:
"Reasonable statutes and ordinances providing for license fees on dogs are constitutional as a valid exercise of the police power of the state or municipality. It is within the power of a municipality to require all persons keeping dogs within the city limits to register and procure tags for them and to pay a fee therefor. The fee is generally considered a license for the purpose of controlling and regulating dogs, rather than a tax imposed for the sake of revenue * * *".
State v. Tull, 1 Terry 179, 40 Del. 179, 8 A.2d 17; City of Dickinson v. Thress, supra; Annotation 49 A.L.R. 848.
The genesis of the dog laws in this state goes back to territorial days when the board of trustees was empowered "To restrain *606 from running at large, cattle, swine or other animals" and "To levy and collect annually a tax of one dollar on each male dog and two dollars on each female dog owned and kept within such town."[3] In 1887, when the legislature provided for the incorporation of cities, it empowered the city council "To regulate, restrain, and prohibit the running at large of horses, cattle, swine, sheep, goats, geese, and dogs, and to impose a tax or license on dogs."[4] The legislature when it adopted the 1919 Code placed dogs in a separate subdivision and made it applicable to every municipal corporation.[5] Power to regulate other animals and poultry and provisions and regulations on pounds were placed in an immediately preceding subdivision.[6] In the 1939 revision these two subdivisions were "combined and revised for brevity" as SDC 45.0201(47) supra.
We believe it abundantly clear from the historic background of these statutes and the language employed, there was no legislative intent to have the enactment of an ordinance providing for a tax or license on dogs to operate as an exclusion of the power to otherwise regulate or prohibit dogs from running at large. The authority to license may be a means of regulation and control of the dog population within a city, but it is obvious that the passage of such an ordinance was not intended as a bar to other regulatory power of the city in the area of canine control. The city council had the power to enact ordinances to regulate or prohibit the running at large of dogs and to impose a tax or license. It could do either or both and the enactment of one did not exclude the other. Such is the language of the statute. Kalmbach v. City of Mobridge, S.D., 132 N.W.2d 293.
We have been unable to find any parallel case involving the question on dog control here presented. However, we refer to several cases as indicative of judicial thought on the broad scope of the power of municipal corporations and other legislative bodies in this area. In Kovar v. City of Cleveland, Ohio App., 102 N.E.2d 472, 60 Ohio Law Abst. 579, state law provided for registration tags on dogs and city ordinance provided for muzzling of dogs by owners when they are permitted to run at large and for impoundment if found at large unmuzzled. The court said: "The City has the right to impound unmuzzled dogs even though they may have been registered * * *". In Weeks v. City of Paragould, 230 Ark. 908, 328 S.W.2d 81, an ordinance made it unlawful for the owner of a dog to allow or permit a dog to run at large within city limits and the violation was made a misdemeanor. Another ordinance appears to have permitted impoundment. The court said: "The fact that the dog might be impounded does not prevent the City from levying a fine against the person who permitted the dog to run at large. * * *" See also Rose v. City of Salem, 77 Or. 77, 150 P. 276; Jeane v. Johnson, La.App., 154 So. 757; Pettus v. Weyel, Tex.Civ.App., 225 S.W. 191.
The order of the trial court dismissing the complaint is reversed and the cause is remanded for further proceedings according to law.
ROBERTS, HANSON and BIEGELMEIER, JJ., concur.
RENTTO, J., not participating.
NOTES
[1] The motion read: "Comes now Lynden D. Levitt, attorney for Defendant in the above entitled cause and respectfully moves the Court to dismiss the Complaint and charges pending against said Defendant for the reason that the powers as conferred upon municipalities by South Dakota Code of 1939, Chapter 45.0201 (47) permit the city to either regulate or prohibit the running at large of dogs or the licensing of dogs running at large and that the provisions of the 1962 Revised Ordinances of the City of Rapid City, Chapter 7.1105 as amended, is an exercise of powers beyond these permitted by the South Dakota Code as cited above in that the dog of the Defendant did at the time of the alleged offense and does now bear a 1965 licensing tag #368 and thereby the Municipal Court of Rapid City has no jurisdiction of the offense charged."
[2] The court in granting the motion stated "the city does not have power to license dogs and also prohibit said licensed dogs from running at large * * * and that this ordinance goes beyond the scope of the power given it by the sovereign state of South Dakota."
[3] Revised Codes, Dakota, 1877, Ch. 24, Sec. 22, subdv. 5, 17. Idem. Dakota Compiled Laws, 1887, Sec. 1043, subdv. 5, 17. The Revised Codes of South Dakota 1903, Sec. 1438, subdv. 5, 17.
[4] Laws of Dakota, 1887, Ch. 73, Art. 4, Sec. 1, subdv. 64. Idem. The Revised Codes of South Dakota, 1903, Sec. 1229, subdv. 65; see also S.L.1907, Ch. 86, Sec. 54, subdv. 65; S.L.1913, Ch. 119, Sec. 53, subdv. 65; S.L.1913, Ch. 120.
[5] South Dakota Revised Code 1919, Sec. 6169, subdv. 38.
[6] South Dakota Revised Code 1919, Sec. 6169, subdv. 37.