SLIP OPINION

Cite as 2015 Ark. 482

# SUPREME COURT OF ARKANSAS

No. CV–15–118

| | |
|---|---|
| KENYGHATTA DAVIS, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF PERSONS SIMILARLY SITUATED<br><br>APPELLANT | Opinion Delivered December 17, 2015<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT [NO. CIV-2010-297 (DL)] |
| V.<br><br>THE CITY OF BLYTHEVILLE, ARKANSAS, AND ITS WATER DEPARTMENT<br><br>APPELLEE | HONORABLE PAMELA HONEYCUTT, JUDGE<br><br><br>AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Appellant, Kenyghatta Davis, both individually and as a class representative, brought a class–action complaint against appellee, the City of Blytheville, Arkansas (the City) and its Water Department (the Water Department). Davis appeals from the circuit court's granting of summary judgment to the City. As she argued before the circuit court, Davis asserts on appeal that (1) because there is no statutory authority allowing the City to impose late fees, the Water Department's charging of late fees on overdue accounts was an ultra vires act; (2) she was entitled to a declaratory judgment finding that the charging of the late fees was usurious and an unreasonable and unconscionable penalty. We affirm the granting of summary judgment.

A circuit court may grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to

SLIP OPINION

judgment as a matter of law. *See, e.g.*, *Hotel Assocs., Inc. v. Rieves, Rubens & Mayton*, 2014 Ark. 254, at 5, 435 S.W.3d 488, 492. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* at 5–6, 435 S.W.3d at 492. In reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* at 6, 435 S.W.3d at 492. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*, 435 S.W.3d at 492.

In 2005, Ordinance Number 1598 was passed, which set the rates for the City's water-system services. The ordinance provided as follows:

> Bills are to be rendered monthly for residential, commercial, industrial and municipal accounts. If customers pay within ten (10) days of billing, the amount shall be the net amount as shown on the bill. After ten (10) days, there shall be added a 10% penalty hereby added. After twenty (20) days, the payment due shall be delinquent and service may be discontinued. A ten dollar ($10.00) re-connect charge will be made to reinstate service.

In 2009, Ordinance Number 1687 repealed the above ordinance and provided as follows:

> Bills are to be rendered monthly for residential, commercial, industrial and municipal accounts. Customers paying by the due date shall pay the net amount as shown on the bill. Payments received after the due date shall be charged a 10% late fee. After fifteen (15) days, the payment due shall be delinquent and service may be discontinued. A twenty ($20.00) penalty charge will be assessed on all delinquent accounts.

In her third amended complaint, Davis noted these ordinances and charges. Davis further alleged that the Water Department also imposed the 10 percent charge on services billed by the Water Department on behalf of other departments. Davis asserted that no state

statute authorizes a late fee or penalty and that the ordinances are therefore illegal, and the enforcement of the ordinances is an ultra vires act. Davis further argued that the late fee is usurious, and because it bore no rational relationship to the costs and expenses the Water Department incurs in collecting delinquent accounts, it was an unreasonable and unconscionable penalty. Davis also alleged that these ordinances did not authorize the Water Department to charge late fees on behalf of other departments and that no ordinance authorized a late fee on charges other than water usage. Davis asked for a declaratory judgment and damages.

Both parties sought summary judgment. The City presented the affidavit of Gary Phillips, the director of the City, who stated that the 10 percent late fees were for customers who had failed to make timely payments and were designed to encourage customers to make timely payments. In his deposition, Phillips stated that the 10 percent late fee was an incentive to pay a bill on time. Also, Phillips stated in his deposition that the Water Department did not incur any additional costs during the fourteen-day period before the 10 percent late fee was imposed and that it did not incur additional costs until the time to disconnect. Phillips also noted that the Water Department collected for water, sewer, sanitation, and mosquito control.

The circuit court concluded that the City had implied authority, express authority, and authority incident to other powers granted to the waterworks and municipalities to establish and assess fees for late payments. The court further acknowledged Davis's argument that the City had acted illegally by allowing the Water Department to assess fees for late payments based on charges arising out of other departments. The court observed that, while the bill

includes other charges for services rendered, these charges were related either to the operation of the Water Department or to charges that the City had authorized the Water Department to collect. The court concluded that expressed, implied, and incidental authority authorized the City to assess fees for late payments on these charges. The court further observed that Davis had failed to offer any legal support for the claim that allowing the Water Department to collect these charges violated the law and that Davis had not offered support that the City could not assess fees for late payments of these services.

As an initial matter, we note that, effective July 27, 2011, Arkansas Code Annotated section 14-43-602(b) (Repl. 2013) provided that the "rule of decision known as 'Dillon's Rule' is inapplicable to the municipal affairs of municipalities." Dillon's Rule is a restrictive view of municipal power that a municipal corporation possesses and can exercise only powers granted in express words, those necessarily or fairly implied in, or incident to, the powers expressly granted, and those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. *Tompos v. City of Fayetteville*, 280 Ark. 435, 438, 658 S.W.2d 404, 406 (1983). This court has not been asked by either party to opine in this case on the change in law relating to Dillon's Rule. Further, consideration of the question is not essential to our disposition of this case.

Davis contends on appeal that there is no statutory authority allowing the City to assess a late fee unless the City first seeks judicial relief. In support of her argument, she points to two statutes. The first, Arkansas Code Annotated section 14-234-602 (Supp. 2015), provides that "[a]ny person who is delinquent on the payment for water, wastewater service, or sewer

SLIP OPINION

service provided by a water system may be held liable, at the discretion of a court of competent jurisdiction, for attorney's fees and costs incurred in the collection of the delinquency." The second, Arkansas Code Annotated section 14-235-223(h) (Repl. 1998), provides that if "any service rate or charge established shall not be paid within thirty (30) days after it is due, the amount of it, together with a penalty of ten percent (10%) and a reasonable attorney's fee, may be recovered by the sewer committee in a chancery suit."

Davis argues that these statutes allow courts to impose late fees if an action for collection of a past-due account is commenced and judgment is rendered in favor of the City, but no other Arkansas statute expressly allows a city or its water department to charge a late fee or late penalty. Davis contends that, absent a specific legislative grant of the authority to pass such an ordinance, any attempt by the City to levy late fees or penalties is an ultra vires act and thus void. She further asserts that the legislature's express grant of authority allowing a water company to bring a cause of action to collect a 10 percent penalty is the equivalent of a declaration that no such penalty can be collected absent a court order. Finally, Davis argues that the City's own ordinances do not authorize a 10 percent penalty on anything other than water usage, and any penalty or late fee on other charges cannot be supported by the City's own ordinances.

Davis's argument, however, does not take into full account our constitutional and statutory law relating to municipalities. The state constitution provides that "[n]o municipal corporation shall be authorized to pass any laws contrary to the general laws of the state." Ark. Const. art. XII, § 4. Keeping in mind this constitutional mandate, we note that Arkansas Code

5

Annotated section 14-43-602(a) (Repl. 2013) provides that a "municipality is authorized to perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs, including, but not limited to, the power to tax."

Municipal corporations have power to construct or acquire waterworks and to regulate them. Ark. Code Ann. § 14-54-702(a)(1). A municipality constructing a waterworks system may sell the water to private consumers. Ark. Code Ann. § 14-234-203(d). The municipality may fix rates for the consumers. Ark. Code Ann. § 14-234-214(a). Because it is necessary for the public health, safety, and welfare, these statutes are liberally construed to effectuate the purposes of the statutes. Ark. Code Ann. § 14-234-102.

The "municipality shall have power, and it shall be its duty, by ordinance to establish and maintain just and equitable rates or charges for the use of and the service rendered by the works." Ark. Code Ann. § 14-235-223(a)(1). Municipalities are also authorized and empowered to own, acquire, construct, equip, operate, and maintain a sewage collection system or a sewage treatment plant. Ark. Code Ann. § 14-235-203(c)(1). Again, being necessary for the public health, safety, and welfare, these statutes are liberally construed to effectuate the purposes of the statutes. Ark. Code Ann. § 14-235-202.

In this case, both Ordinance Number 1598 and Ordinance Number 1687 provided that failure to pay a bill by a certain date resulted in the imposition of a 10 percent penalty. According to Arkansas Code Annotated section 14-55-601(a) (Supp. 2015), "Bylaws and ordinances of municipal corporations may be enforced by the imposition of fines, forfeitures, and penalties on any person offending against or violating them." The grant of power to

impose a fine or penalty was discussed by this court in *Weeks v. City of Paragould*, 230 Ark. 908, 328 S.W.2d 81 (1959). There, an ordinance made it unlawful for a dog owner to allow or permit a dog to run at large within city limits, and the violation was made a misdemeanor punishable by a fine. An Arkansas statute concerning the powers of municipal corporations, however, only provided that the municipalities had the power to prevent the running at large of dogs, and injuries and annoyances therefrom, and to authorize their destruction. Ark. Stat. Ann. § 2502 (Repl. 1980) (current version at Ark. Code Ann. § 14-54-1102 (Repl. 1998)). After noting that municipal corporations could enforce ordinances by imposition of fines, the court noted that because municipal corporations "have power to prevent the running at large of dogs and to prescribe fines against persons who violate the ordinance, it necessarily follows that the City of Paragould had the power to adopt Sections 1 and 3 of the Initiated Ordinance No. 1 here involved." *Id*. at 83, 328 S.W.2d at 910. The court concluded that the "fact that the dog might be impounded does not prevent the City from levying a fine against the person who permitted the dog to run at large." *Id*., 328 S.W.2d at 910.

Arkansas Code Annotated section 14-235-223(a)(1) gives a city council the power "to establish and maintain just and equitable *rates* or *charges* for the use of and the service rendered by the works." (Emphasis added.) We must read that statute in conjunction with Arkansas Code Annotated section 14-235-202 which provides us guidance on the interpretation of this statute. Section 14-235-202 states that the "act, being necessary for the public health, safety, and welfare, shall be liberally construed to effectuate its purposes." When section 14-235-223(a)(1) is construed liberally, as section 14-235-202 instructs, cities have the implied

authority to establish a late fee as a "rate or charge" under section 14-235-223.

Practically speaking, this authorized rate or charge in the form of a late fee is a necessary and essential part of the operations of the City, as the general manager of Blytheville Waterworks testified, because they encourage customers to pay on time. Indeed, if customers do not pay timely, the Water Department cannot pay its bills timely. Thus, the establishment of late fees is essential to the functionality of the Water Department, and construing section 14-235-223 liberally, late fees are "rates and charges for the use of and the service rendered by the works." The two statutes relied on by Davis, Arkansas Code Annotated section 14-234-602, and Arkansas Code Annotated section § 14-235-223(h), do not limit the administrative power of a municipality to levy a fine or penalty against a person who has not paid his bill for water or sewer services as the exclusive remedy. Rather, these statutes give municipalities the additional authority to file suit in court and seek attorney's fees in litigation concerning the collection of those delinquent accounts. Thus, in accordance with these statutes and *Weeks*, the City could impose a late fee when there is a violation of the ordinance relating to the payment of a bill.

Davis further asserts that there is "not one single ordinance which allows the water department to impose a late fee or penalty on any portion of a bill" other than the ordinance relating to water. In cursory fashion, and without citation to authority, Davis asserts that "any late fees imposed on any other charges other than water fees are not even authorized by the city's own ordinances and are, therefore, illegal and *ultra vires*." Other than making this assertion, however, Davis does not develop the argument or otherwise challenge the circuit

court's observation that while the bill includes other charges for services rendered, these charges either were related to the operation of the Water Department or were charges in which the City authorized the Water Department to collect payment. We do not research or develop arguments for appellants. *See, e.g.*, *Myers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, at 15, 380 S.W.3d 906, 915. We do note that the record contained a sanitation ordinance that permitted the assessment of a late fee, as well as an ordinance that permitted the Water Department to bill for City services.

Davis does argue that these late fees are usurious and an unreasonable and unconscionable penalty. In its order, the circuit court concluded that the late charges are not usurious. The court stated that because the penalty may be avoided by discharging the debt when due, no usury claim exists. A similar approach was taken in *Hayes v. First National Bank of Memphis*, 256 Ark. 328, 507 S.W.2d 701 (1974), where this court stated that because the buyer has it in his power to avoid the penalty by discharging the debt when it is due, agreements for penalties to induce prompt payment are free from usury. We hold that *Hayes* controls, and we likewise conclude that the late fees are not usurious.

This court acknowledged in *Hayes* that an agreement will be declared usurious if it is shown to be a mere contrivance to avoid usury and that the real intention is a loan or forbearance of money and the taking of more than legal interest; but such an intention must first be made manifest from the agreement itself or from extraneous proof. The City submitted Phillips's affidavit, however, in which he stated that the late fees applied to customers who had failed to make timely payments and were designed to encourage timely payments by the

customers. Davis did not meet this proof with proof that the late fee was a mere contrivance to avoid usury. Moreover, the late fees are neither unreasonable nor an unconscionable penalty. The statutory limits on penalties permitted for violations of ordinances, which is set out in Arkansas Code Annotated section 14-55-504(a) (Supp. 2015), greatly exceeds the late fee imposed here. That provision permits municipalities to assess by ordinance a fine or penalty of $1000 for any violation of an ordinance, double that sum for each repetition, or $500 a day for continuous offenses.

Accordingly, we hold that summary judgment in favor of the City was proper.

Affirmed.

DANIELSON and WYNNE, JJ., dissent.

**ROBIN F.WYNNE, Justice, dissenting.** I dissent from the majority's decision to affirm the grant of summary judgment in favor of the City of Blytheville and its water department (the City). Because I believe the grant of summary judgment was improper, I would reverse and remand to the circuit court for further proceedings.

The majority holds that the City has express statutory authority to impose the penalty pursuant to Arkansas Code Annotated section 14-55-601(a) (Repl. 2013), which allows municipal corporations to enforce their ordinances through the imposition of fines, forfeitures, and penalties. However, the City never claimed, either below or on appeal, that it had the authority to impose the penalty pursuant to that provision. The circuit court did not rely on that provision in making its ruling. The majority cites our decision in *Meyers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906, for the proposition that this court will not

research or develop an argument for a party on appeal. That precedent should apply equally to the argument put forth by the majority that was never raised below or on appeal.

The majority holds that the imposition of a penalty is justified by the City's authority, pursuant to Arkansas Code Annotated section 14-235-223(a)(1), to establish and maintain just and equitable rates or charges for the use of and services rendered by its waterworks. It is clear that the parties do not agree regarding the material question of fact of whether the penalty qualifies as "just and equitable rates or charges." The order should be reversed and the case remanded for that reason. Furthermore, under the majority's logic, there is functionally no limit to what a municipal waterworks could force their customers to pay in the guise of "rates or charges." The majority should seriously reconsider the effect of its holding on this issue.

Also, the majority holds that the late penalty is necessary and essential based on the deposition testimony of the general manager of the City's waterworks. Actually, instead of demonstrating that the penalty is necessary and essential, the testimony shows that the penalty is imposed because it is the most convenient way for the City to procure timely payment. The manager testified that other available methods for encouraging timely payment would be just as effective, if not more so, than the late-payment penalty, but that the penalty was less labor-intensive and more convenient for the City. This is not sufficient for the penalty to be considered necessary and essential for the operation of the water department.

For these reasons, I dissent.

DANIELSON, J., joins.

*James W. Harris*, for appellant.

*John L. Wilkerson*, for appellee.